HENRY, et al. *v.* TONEY, et al.

May 25, 1953

No. 38785 33 Adv. S. 19 64 So. 2d 904

*Roy J. Goss* and *Williams & Williams*, for appellants.

Brief of Appellant, Robert Patterson.

*Kelly J. Hammond, James R. Davis, Henry Mounger, M. M. Roberts, Wm. H. Morrow* and *Joe A. Thompson,* for appellees.

Reply to brief of John Henry, Roy J. Goss and Toxey H. Smith.

Reply to brief of appellant Robert Patterson.

ETHRIDGE, J.

This case involves the interpretation of the effect of Code of 1942, Section 479, which forbids a person who

wilfully causes the death of another to inherit property from the latter.

John Henry married Bertha Toney around 1912. These persons, both Negroes, had no children, and in August 1936, were living in the City of Kent in Portage County, Ohio. Prior to that time Bertha had inherited from her father and mother, residents of Marion County, Mississippi, an interest in 153 acres of land in Marion County. She and her two brothers, William and Mc-Kinley Toney, had each inherited a one-third interest in this property. Before the date in question, August 6, 1936, 126 acres of this land had been validly sold to the State for taxes, and subsequently in 1942 one of the three heirs, McKinley Toney, had purchased this tract from the State. Since it is stipulated that McKinley Toney, in buying this land from the State, purchased it for the benefit of himself and his brother and sister as cotenants, the fact of the tax sale and patent does not affect the issues in this case.

At around 3 A. M. Friday morning on August 6, 1936, Bertha Toney Henry was shot by a shotgun in her and John Henry's house in Kent, Ohio, and died about twenty-four hours later. He was indicted for second degree murder by a grand jury in the Court of Common Pleas of Portage County, Ohio. He pleaded not guilty of second degree murder, but pleaded guilty to a charge of manslaughter, and on November 10, 1936, John Henry was adjudged guilty of manslaughter and was sentenced to the Ohio State Penitentiary. He served eighteen months of this term and was then placed on parole.

In January 1948, William Toney, a brother and co-heir, with the deceased Bertha Toney Henry of their parents, and the heirs of her other brother, McKinley Toney, deceased, filed this suit in the Chancery Court of Marion County against John Henry, the husband of Bertha Toney Henry, deceased, and against several mineral grantees of John Henry. The suit sought to cancel as clouds on complainants' title the claims asserted by

John Henry and his grantees to the aforesaid lands in Marion County. The bill alleged that John Henry was claiming the one-third interest of his deceased wife, Bertha Toney Henry, in these lands; and it charged that defendant Henry had wilfully killed his wife, Bertha, and that for that reason, under the provisions of Code of 1942, Section 479, Henry could not inherit from her.

Code Section 479 provides as follows: "If any person wilfully cause or procure the death of another in any way, he shall not inherit the property, real or personal, of such other; but the same shall descend as if the person so causing or procuring the death had never been in being."

The answers of defendant John Henry and his grantees denied that Henry had wilfully caused or procured the death of his wife, and averred that he was her lawful husband, and as such received all of his wife's interest in and to the lands in question.

In the first trial of this case complainants introduced in evidence authenticated copies of the indictment, Henry's plea of guilty to manslaughter, and the judgment thereon by the Ohio court. The trial court refused to let Henry testify to explain the circumstances of the killing and of his plea of guilty. The final decree adjudicated that Henry had pleaded guilty to manslaughter in the death of his wife, and for that reason he was not entitled to inherit her property; and it therefore cancelled the claims of Henry and his grantees, and adjudicated that her two brothers were her lawful heirs. On appeal, in Henry v. Toney, 211 Miss. 93, 50 So. 2d 921 (1951), this Court held that under both Mississippi and Ohio law manslaughter is not necessarily a wilful killing; that Henry's plea of guilty to manslaughter was not conclusive evidence of guilt of a wilful killing, but could only amount to slight evidence thereof; and therefore the case was reversed and remanded for a new trial, in which Henry was authorized to testify to the circumstances of the killing and in explanation of his plea

of guilty, and in which any evidence relevant to the wilfulness of the killing would be admissible.

On the second trial in the chancery court, in July 1951, the complainants, appellees here, introduced the depositions of four witnesses from Ohio who testified concerning their knowledge of various facts surrounding the killing of Bertha Toney Henry. One witness was the Chief of Police of the City of Kent in 1936, two of the witnesses were present in John Henry's house during or prior to the shooting, and another was Henry's sister-in-law who testified concerning certain statements made by Bertha to her and in the presence of John Henry before Bertha's death. Henry testified at length concerning his wife's death. His version was in brief that Bertha was extremely angry because some men and women had come to visit them late that night, that she picked up the shotgun and was threatening to run them out of the house when he grabbed it by the stock in order to prevent her from shooting anyone; and that when she jerked it, the gun accidentally went off and shot her. On the other hand, the complainants' witnesses supported their version that Bertha was in bed when John Henry shot her while he was standing several feet away from the bed; that he was abusive toward, and angry at her for her refusal to get up after midnight and cook food for the several guests whom Henry had brought home; and that when she refused to do that, he shot her.

The final decree on the second trial adjudicated that the killing was wilful and without justification, cancelled the defendants' claims to the property, and decreed that Bertha's interest in it vested in her brother William and the heirs of her other brother, McKinley Toney. From that decree the defendants appealed.

The evidence amply warrants the finding of the chancellor that Henry wilfully caused the death of his wife, and on this record we certainly cannot say that he was manifestly wrong in that conclusion. Compare Gholson

v. Smith, 210 Miss. 28, 48 So. 2d 603, (1950); Penn Mutual Life Insurance Company v. Nunnery, 176 Miss. 197, 210-211, 167 So. 416 (1936).

Appellants also argue that this is a suit to establish a penalty or forfeiture, and that it is barred by Code of 1942, Section 731, which provides: "All actions and suits for any penalty or forfeiture on any penal statute, brought by any person to whom the penalty or forfeiture is given, in whole or in part, shall be commenced within one year next after the offense was committed, and not after."

In brief, it is suggested that Section 479 is a penal statute, and that it is not self-operating, but requires a judicial determination; and that hence one asserting rights under this statute is required by Section 731 to bring a suit on it within one year from the date the offense was committed. However, we do not think that Section 731 is applicable. This is not a suit for any penalty or forfeiture on a penal statute. Nor is it brought by any person to whom a penalty or forfeiture is given, except only in a very indirect sense.

Section 479, prohibiting a willful killer from inheriting from his victim, was first enacted in the Code of 1892, and in the Codes of 1892, 1906, 1930 and 1942 it was a part of the chapter on "Descent and Distribution." Section 470 provides that a married woman's property descends to her husband alone if they have no children, but that statute must be read along with Section 479, which provides, as in the present case, that if he willfully kills her "he shall not inherit the property." The latter statute then further makes the legislative intent manifest by providing, "but the same shall descend as if the person so causing or procuring the death had never been in being." Section 479 is in fine a part of the law of descent and distribution in Mississippi. It is not a penal statute and works no forfeiture of any vested property right of Henry. It simply disqualifies him from inheriting from

his wife whom he has willfully killed. A similar rationale has been adopted by decisions from other states upholding the constitutionality of such statutes. They have held that such a statute results in no forfeiture of an estate which the killer has, but that it simply prevents him from acquiring property in an unauthorized and unlawful manner. The surviving husband, John Henry, never acquired an estate in this property, under the laws of descent and distribution, and therefore Section 479 does not cause him to forfeit anything which he owned. Annotations, 6 A. L. R. 1408 (1920); Wilson v. Bates, 231 S. W. 2d 39, 41-42, (Ky. 1950).

Another Mississippi statute, analogous in purpose to Section 479, prohibits a person who kills another from taking under his will. Code Section 672 states: "If any person shall willfully cause or procure the death of another in any manner, he shall not take the property, or any part thereof, real or personal, of such other, under any will, testament, or codicil; any devise to such person shall be void, and, as to the property so devised, the decedent shall be deemed to have died intestate."

■■■ For the same reasons as those stated above, the ten year statute of limitations in Code Section 709, requiring an entry or the commencing of an action to recover land within ten years after the right to do so accrued, is not applicable. Henry was not deprived of any vested right by Section 479. He was disqualified to take as an heir. And moreover, appellants do not claim and offer no evidence that they have any adverse possessory title to the lands.

■■■ There was no error in admitting into evidence the testimony of Police Chief West as to statements made by Bertha Henry after she was shot, as to how the shooting took place. This witness testified that, at the time Bertha made these statements, her husband John Henry was present, and that they both agreed on Bertha's version of the shooting, and that John Henry admitted those

facts at that time. Hence the testimony was competent as a party opponent's admission. Appellants also complain about the admission of testimony by Amanda Henry as to declarations made by Bertha after she was shot concerning the shooting. Amanda said that she and John Henry were standing next to Bertha's hospital bed when Bertha told her that the shooting was not an accident, and that Henry shot her while she was in bed. Amanda said that Henry was present and heard Bertha's statements, but she was not asked and did not say that he did not deny them. Hence this testimony of Amanda was not properly qualified as an admission by silence. However, on cross-examination, Henry said that Bertha made no statements such as Amanda had testified to, but he admitted that he and Amanda were in the hospital room together with Bertha, that they had a conversation, and that whatever was said, "whether it was for or against" him, he did not deny. So although the admission of Amanda's testimony as to this conversation was error, we do not think that it was reversible error, particularly in light of the entire record. Appellants also contend that the deceased was testifying against her husband, which is forbidden by Code Section 1689, as the wife was not a party in this proceeding. However, the effect of the foregoing testimony was to establish a party opponent's admission, according to which Henry had previously made statements contrary to his present position. The admission of somewhat similar evidence was recently approved in Gillespie v. State, 8 Adv. S. 1, 61 So. 2d 150 (Miss. 1952).

 Appellants say that the trial court erroneously refused to permit John Henry to explain why he entered a plea of guilty to manslaughter in Ohio. However, any error in sustaining an objection to that question was later cured when on cross-examination Henry on two occasions testified that he had pleaded guilty because his three lawyers had advised him to do so. Calvin v. State, 206

Miss. 94, 39 So. 2d 774 (1949). The foregoing are the only points argued on appeal which we think necessitate a response.

Affirmed.

*McGehee, C. J.*, and *Lee, Kyle* and *Arrington, JJ.*, concur.